# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA FT. MYERS

LUXEMBEAU BAZIN )
                )
                )          Agency # 058-845-337
     Petitioner )          Case Number:
                )
V.              )
                )     2:13-cv-197-FtM-29DNF
ERIC HOLDER,    )
ATTORNEY GENERAL; )
JANET NAPOLITANO, )
SECRETARY OF THE DEPARTMENT )
HOMELAND SECURITY; )
MARK MOORE,     )
DIRECTOR OF THE SOUTHERN )
DISTRICT FIELD OFFICE; )
ANTHONY AIELLO  )
ASST. FIELD OFFICE DIRECTOR )
STUART K. WHIDDON, )
GLADES COUNTY DETENTION )
FIELD OFFICE AND WARDEN OF )
IMMIGRATION DETENTION )
FACILITY;       )
 .              )
                )
     Respondents. )
_____ )

## PETITION FOR A WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C SECTION 2241

A pro se pleading is held to less stringent standards than more formal, pleadings drafted by lawyers. See *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) . A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998); *Lewis v. Attorney General*, 878 F.2d 714, 721-22 (3d Cir. 1989); *United States v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912, 90 S. Ct. 2206, 26 L. Ed. 2d 566 (1970).



Petitioner, LUXEMBEAU BAZIN, pro se, hereby petitions this Court for a writ of habeas corpus to remedy petitioner's unlawful detention by Respondents. The basis for this petition is set forth in detail in the accompanying memorandum of law, including any attached exhibits filed herewith. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

## INTRODUCTION

1. Immigration and Customs Enforcement ("ICE") of the Department of Homeland Security ("DHS") has detained Petitioner since 08-09-2012 at the Glades County Detention Center. ICE has contracted with the facility to house detainees such as Petitioner. Petitioner is under the control of the respondents and their agents.

2. Petitioner contends that he is not subject to the mandatory detention provisions of INA § 236(c), 8 U.S.C. § 1226(c), and he asserts that his prolonged detention violates his due process rights under the Fifth Amendment of the Constitution of the United States.

## CUSTODY

3. Petitioner is in the physical custody of Respondents and U.S. Immigration and Custom Enforcement ("ICE"). Petitioner is detained at the Moore Haven, Florida. ICE has contracted with "Glades County Detention Center" to house immigration detainees such as Petitioner.

## JURISDICTION

4. This action arises under the Constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 U.S.C § 1101 et seq., as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104- 208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C § 701 et seq.

5. This Court has jurisdiction under 28 U.S.C. § 2241; art. I § 9, cl. 2 of the United States Constitution ("Suspension Clause"); and 28 U.S.C § 1331, as Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, and the All Writs Act, 28 U.S.C. § 1651.

2

6. The use of the Writ of Habeas Corpus to challenge detention by ICE is not foreclosed by the REAL ID Act. The REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231 (May 11, 2005), Title I, Section 106(c), amending INA §§ 242(a)(2)(A), (B), (C) and § 242(g), only deprives the district court of habeas jurisdiction to review orders of removal, not challenges to detention. *Hernandez v. Gonzalez*, 424 F.3d 42, 42 (1st Cir. 2005) (proper venue for a habeas petition remains the district court); *INS v. St.Cyr*, 533 U.S. 289, 364-65 (2001) ("The writ of habeas corpus has always been available to review the legality of executive detention."). The first jurisdictional issue presented in this case is whether the REAL ID Act of 2005 divests this court of jurisdiction over the petition. Although the REAL ID Act of 2005 eliminated district court jurisdiction over habeas corpus petitions challenging indefinite detention, district courts retain subject matter jurisdiction over section 2241 petitions challenging the legality of an alien's detention as it is of a Constitutional magnitude.

7. In *Martinez-Jaramillo v. Gonzales*, No.05-75161 (9th Cir. January 20, 2006)(unpublished order); Answer, Ex. 31, the Ninth Circuit held that the district court erred in transferring the petition to the court of appeals pursuant to the REAL ID Act of 2005 because the petition "challenged [petitioner's] detention, not a final order of removal." [Answer, Ex. 31 (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-688, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to" indefinite detention".

8. Accordingly, this court has jurisdiction under 28 USC § 2241 to consider petitioner's challenge to the lawfulness of his detention by ICE. *Martinez v. Gonzales 504 F. Supp. 2d 887; 2007.* "[C]onsistent with the construction given by the Supreme Court to similar statutes," the Ninth Circuit held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006), at 1078 (citing *Zadvydas*, 533 U.S. at 701). Rather, the detention must be for a reasonable period, and only if there is a "significant likelihood of removal in the reasonably foreseeable future." *Nadarajah*, 443 F.3d at 1079-80 (quoting *Zadvydas*, 533 U.S. at 701).

9. Petitioner has exhausted his administrative remedies to the extent required by the law. The Board of Immigration Appeals ("BIA"), in *Matter of Rojas*, 23 I. & N. 117, 127 (2001), ruled that the mandatory provisions of § 1226(c) do not require DHS to detain an alien immediately upon their release from the underlying offense. Therefore, the BIA would rule that Petitioner is subject to mandatory detention. Consequently, Petitioner is not required to exhaust administrative remedies, because the BIA has already "predetermined the issue". *Louisaire v. Muller*, 758 F. Supp. 2d 229 (S.D.N.Y. 2010).

3

## VENUE

10. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S.484, 493 – 500 (1973), venue lies in the United States District Court for the Middle District of Florida, Fort Myers the judicial district in which Petitioner resides. Venue is proper in the district pursuant to 28 U.S.C. § 1391(e). The removal proceedings were conducted by an immigration judge at Krome in Miami, Florida; and Petitioner is currently detained at Glades County Detention Center, located at Moore Haven, Florida.

## PARTIES

11. Petitioner is a native and citizen of HAITI. Petitioner was first taken into ICE custody on 08-09-2012, and has remained in ICE custody continuously since that date.

12. Respondent **ERIC HOLDER** is the Attorney General of the United States and is responsible for the administration of ICE and the implementation and enforcement of the Immigration & Naturalization Act (INA). As such, Mr. ERIC HOLDER has ultimate custodial authority over Petitioner.

13. Respondent **JANET NAPOLITANO** is the Secretary of the Department of Homeland Security. She is responsible for the administration of ICE and the implementation and enforcement on the INA. As such, Janet Napolitano present Assistant Secretary of ICE is the legal custodian of Petitioner.

14. Respondent **MARK MOORE** is the ICE Field Office Director of the Southern District Field Office and is Petitioner's immediate custodian. See *Vasquez V. Reno*, 233 F. 3d 688, 690 (1st Cir. 2000), cert. denied, 122 S. Ct. 43(2001).

15. Respondent **ANTHONY AIELLO** is the ICE Assit. Field Office Director of the Southern District Field Office and is also Petitioner's immediate custodian.

16. Respondent Warden **STUART K. WHIDDON** of Glades County, where Petitioner is currently detained under the authority of ICE, alternatively may be considered to be Petitioner's immediate custodian.

## FACTUAL ALLEGATIONS

17. Petitioner LUXEMBEAU BAZIN is a native and citizen of HAITI. The Petitioner admitted to the United States on 06-25-2007 as a Lawful Permanent Resident at the age of 15. From age 15 till now petitioner remained in U.S. and never left this country, he graduated high school and attended to study in a college computer engineering and science. On 04-25-2012 petitioner were convicted in the Circuit Court of

4

Broward County Florida, for the offense of Child abuse, in violation of Florida Statute 827.03 for which petitioner were sentenced to two years probation and 25 hours of community service.

18. On August 9th, 2012, the Department of Homeland Security (DHS) filed a Notice to Appear (NTA) with the Court, charging petitioner with removability under section 237 (a)(2)(E)(i) of the Immigration and Nationality Act (Act), on basis of the following violations the petitioner is a subject to removal from the United States.

19. To date, however the ICE has been unable to remove the petitioner to HAITI. A total of 7 months have past in detention and ICE has not been able to remove the petitioner to HAITI. Petitioner has cooperated and complied fully with all the rules, laws and regulations pertain to Immigration Court and ICE during all the removal proceedings and continue.

## LEGAL FRAMEWORK FOR RELIEF SOUGHT

20. Petitioner argues that the Due Process Clause of the Fifth Amendment limits prolonged mandatory detention in removal proceedings. As previously explained, this court has jurisdiction to consider the constitutionality of petitioner's prolonged mandatory pre-removal detention. See *Aguilar v. U.S. Immigration and Customs Enforcement Div. of the Dep't of Homeland Sec.*, 510 F.3d (1st Cir. 2007) at 11; *Hernandez v. Gonzales*, 424 F.3d (1st Cir. 2005) at 42.

21. Petitioner first argues that he has a fundamental right to be free from unlawful governmental detention. The Fifth Amendment entitles aliens to due process of law in deportation proceedings. *Reno v. Flores,* 507 U.S. 292, 306, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). In *Flores,* the Supreme Court articulated that a substantive due process claim based on the Fifth Amendment includes a substantive component that forbids the government from infringing on certain fundamental liberty interests unless the infringement is narrowly tailored to serve a compelling government objective. *Id.* at 302. The *Flores* Court also explained that a court's substantive due process analysis must begin with "a careful description of the asserted right." *Id.* Here, Petitioner asserts that he has a substantive liberty interest that is implicated by his continued civil detention during his removal proceedings.

22. In *Demore v. Kim*, 538 U.S. 510, 155 L. Ed. 2d 724, 123 S. Ct. 1708, 2003 U.S. LEXIS 3428(2003), the District Court agreed with respondent that 1226(c)'s requirement of mandatory detention for certain criminal aliens was unconstitutional. *Kim v. Schiltgen* , No. C 99-2257 SI {538 U.S. 515} (Aug. 11, 1999), App. to Pet. for Cert. 31a-51a. The District Court therefore granted respondent's petition subject to the INS' prompt undertaking of an individualized bond hearing to determine whether respondent posed either a flight risk or a danger to the community. *Id.*, at 50a. Following that decision, the District Director of the INS released respondent on $ 5,000 bond.

23. Nevertheless, a careful reading of the Supreme Court's decision reveals it to be not the sweeping pronouncement suggested by Respondents, but rather a narrower holding grounded in repeated reference to the anticipated brevity that pre-final order removal proceedings are expected to take in the ordinary course. *Mourad v. Madrane, 2007 U.S. Dist. LEXIS 7970.* The emphasis in *Demore* on the anticipated limited duration of the detention period is unmistakable, and the Court explicitly anchored its holding by noting a "brief period," *id. at 513, 523,* of "temporary confinement." *Id. at 531.* Indeed, the references to the brevity and limited nature of confinement can be found throughout *Demore.* See *id. at 513* ("Congress . . . may require that [criminal aliens] be detained for the brief period necessary for their removal proceedings."); *id. at 523* ("Respondent argued that the Government may . . . detain him for the brief period necessary for his removal proceedings."); *id. at 526* (noting the "Court's longstanding view that the Government may . . . detain deportable aliens during the limited period necessary for their removal proceedings"); *id. at 529 n.12* (noting "the very limited time of the detention at stake") (emphasis added). Moreover, in upholding the constitutionality of 236(c), the Supreme Court specifically referenced statistics that demonstrated the typically brief period that pre-final order removal proceedings require and the attendant short periods of detention that are therefore typically imposed. Relying on statistics compiled by the Executive Office for Immigration Review, the Supreme Court noted that in 85% of cases in which aliens were detained pursuant to 236(c), removal proceedings were completed within an average of 47 days, with a median of 30 days. *Id. at 529.* Furthermore, the Court noted that even in the remaining 15% of cases, in which an alien appeals an Immigration Judge's ruling to the Board of Immigration Appeals, an appeal takes an average of four months, with an even shorter median time. Id. As the United States Court of Appeals for the Ninth Circuit commented, "[t]here is no indication anywhere in *Demore* that the Court would countenance an indefinite detention." *Nadarajah v. Gonzales,* 443 F.3d 1069, 1081 (9th Cir. 2006).

24. Statutes that permit indefinite detention of an alien raise serious constitutional due process concerns under the Fifth Amendment. See *Zadvydas v. Davis,* 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("statute permitting indefinite detention of an alien would raise a serious constitutional problem"). "Under 1226(c), not only does [pre-removal] detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas.*" *Demore,* 538 U.S. at 529. That said, an unreasonable delay may raise constitutional due process concerns whether it occurs before or after removal. *Flores-Powell,* 677 F.Supp.2d at 471 ("'"[u]unreasonable delay" can be constitutionally problematic whether it occurs pre- or post-removal'") (quoting *Vongsa,* 670 F.Supp.2d at 123, discussing *Demore,* 538 U.S. at 532 (Kennedy, J., concurring) (stating that alien "could be entitled to an individualized determination as to his risk of flight and dangerousness" where the government has caused an "unreasonable delay"). Consequently, courts construe section 1226(c) "to implicitly require that removal proceedings and the corresponding detention be completed within a reasonable period of time, beyond which detention may not continue without an individualized determination of risk of flight and dangerousness."

6

*Flores-Powell,* 677 F.Supp.2d (D.Mass. 2010) at 471 (citing *Ly v. Hansen,* 351 F.3d 263, 270 (6th Cir. 2003)).

25. In defining a reasonable time limitation for detention during removal proceedings, the court in *Flores-Powell,* adhering to a Sixth Circuit case, set out the following five factors to assess prolonged mandatory detention:

(1) the overall length of detention; (2) whether the civil detention is for a longer period than the criminal sentence for the crimes resulting in the deportable status; (3) whether actual removal is reasonably foreseeable; (4) whether the immigration authority acted promptly to advance its interests; and (5) whether the petitioner engaged in dilatory tactics in the Immigration Court.*Flores-Powell,* 677 F.Supp.2d. at 471 (citing *Ly v. Hansen,* 351 F.3d at 271-272). **Examining these factors seriatim, petitioner's mandatory detention has lasted 7 months up to filing this petition.** In comparison, one court in the district of Massachusetts determined that 19 months in detention exceeds the "limited period" of detention for removal proceedings contemplated in *Demore. Geegbae v. McDonald,* 2010 U.S. Dist. LEXIS 115896, 2010 WL 4292734, at *2 (D.Mass. Nov. 1, 2010) (citing *Demore,* 538 U.S. at 531). Another court found that detention of 27 months, most of which was pursuant to section 1226(c), extended "far beyond any reasonable period". *Bourguignon v. MacDonald,* 667 F.Supp.2d 175, 176 & 184 (D.Mass. 2009). Yet another court determined that 20 months' detention could "hardly be characterized as 'the brief period necessary' for removal proceedings". *Vongsa v. Horgan,* 670 F.Supp.2d (D.Mass. 2009) at 127-129.

26. The period of <u>pre-removal period</u> detention exceeding the upper range contemplated by the *Demore* Court (six months), must be added to any additional anticipated detention when considering whether Petitioner's release is warranted under the third leg of the *Zadvydas* analysis. 533 U.S. at 701. **Petitioner has been detained for a total of seven (7) months, one month longer than the maximum <u>pre-removal</u> detention period contemplated by the *Demore* Court.** The Court in *Moallin v. Cangemi,* 427 F. Supp. 2d 908; 2006 found that, " in the absence of any plan or timetable for removal, and given his [ petitioner]already seven months of detention by ICE beyond that deemed reasonable by the *Demore* Court, even if Petitioner can be said to be in <u>pre-removal detention</u>--a position this Court does not accept--the Court finds that his release is warranted". *Moallin v. Cangemi,* 427 F. Supp. 2d 908; 2006. The Supreme Court, however, did not set a temporal time limit on the detention of an alien pending removal proceedings, acknowledging that detention under 1226(c) was typically short in duration. *Id.* at 527-28 (distinguishing its decision in *Zadvydas* with respect to detention under 1231, by emphasizing that detention under 1226(c) had an obvious termination point and that such confinement was generally brief). See also *Contant v. Holder,* 352 Fed. Appx. 692, 694 (3rd Cir. 2009) (where a <u>pre-removal-order</u> petitioner is being detained pending a decision on whether he is to be removed from the United States, there is no indication that petitioner cannot be deported to his country of origin following an unfavorable removability decision). There can also be no doubt that the Due Process Clause protects immigrants as well as citizens. See *Mathew V. Diaz,* 426 U.S.67,77,96 S.Ct.1883, 48 L.Ed.2d 478 (1976)(**"The Fifth Amendment, as well as the Fourteenth Amendment,**

protects every [alien]from deprivation of life, liberty or property without due process of law."). Congress has "broad power over naturalization and immigration" that allows it to "make rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521(quoting *Diaz*, 426 U.S. at 79-80). It is also noteworthy that Justice Rehnquist, in his dissent in *Sugarman v. Dougall*, 413 U.S. 634, 641, 37 L.Ed. 2d 853, 93S. Ct 2842 (1973) said:

"the court in [*Sugarman* and *Griffiths*(In re Griffits, 413 U.S. 717, 37 L. Ed. 2d 910, 93 S.Ct. 2851 (1973)] holds that **an alien is not really different from a citizen, and that any legislative classification on the basis of alienage is 'inherently suspect'.**"*Id.* at 649.

27. The "customs and usages of civilized nations" have long been used as a source of international law binding upon all nations "where there is no treaty, and no controlling executive or legislative or judicial decision..."The *Paquete Habana*, 175 U.S.677, 702, 44 L.Ed. 320, 20S.Ct. 290 (1990). The principle of **International Customary Law** have been always invoked in the field of immigration law. See, e.g., *Rodriguez-Fernandez v. Wilkinson*, 505 F. Supp. 787, 795-800 (D. Kan. 1980) (holding that indefinite detention of excludable alien violated customary International law), *Aff'd*, 654 F.2d 1382, 1388 (10th Cir. 1981).

28. The sole issue before the Court is whether 8 U.S.C. 1226(c), pursuant to which the immigration judge concluded Petitioner was subject to mandatory detention and therefore ineligible for bond, clearly and unambiguously applies to Petitioner, a **Legal Permanent Resident** (LPR) detained by ICE more than **seven (7) months**. Because the Court in *Khodr v. Adduci*, 697 F. Supp. 2d 774 found it does not apply, ICE's mandatory detention is contrary to the laws of the United States. The Court granted the writ. *Khodr v. Adduci*, 697 F. Supp. 2d 774. As Justice Kennedy concluded, an alien "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Demore v. Kim*, 538 U.S. 510, 155 L. Ed. 2d 724, 123 S. Ct. 1708, 2003 U.S. LEXIS 3428(2003) at 1722 (Kennedy, J., concurring). "were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.*

29. Tenth Amendment precepts petitioner's argument that the **Supremacy Clause** should be carefully and sparingly applied in the immigration context which demonstrate that individuals can raise Supremacy Clause questions without facing any standing obstacles. Although the **Supremacy Clause and the Tenth Amendment** (both structural constitutional norms) directly regulate relations between governments rather that the relations between governments and individuals, nevertheless, individuals should have standing to assert constitutional protections derived from them. Cf. *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919, 77 L.Ed. 2d 317, 103 S. Ct. 2764 (1983). In *Chadha* an individual facing deportation had standing to challenge a legislatively mandated procedure that violated the constitutional principle of bicameralism, another structural norm, as long as the individual had suffered **an injury in**

fact and could demonstrate that the judicial relief requested would prevent or redress the claimed injury. The deprivation of liberty, family and freedom has done emotional, mental and financial injury to the petitioner. **The Supremacy Clause itself requires that the Constitution, laws of the United States and treaties "shall be the Supreme Law of the Land."** U.S. Const. art. VI, § 2.

30. In *Zadvydas v. Davis*, 533 U.S. 678, 150 L. Ed. 2d 653, 121 S. Ct. 2491 (2001) Supreme Court analyzed the two regulatory goals set forth in the statute-- "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." The Court found that neither goal justified indefinite civil detention as administered by the statute. *Id.* at 690. With respect to the first goal of ensuring the alien's appearance, the Court determined that this goal "is weak or nonexistent where removal seems a remote possibility at best." *Id.* While recognizing that the second justification does not necessarily diminish because the alien is nonremovable, the Court adhered to its prior holdings in which it "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691 (citations omitted). The Petitioner is not being detained pursuant to the post-removal-period detention authority set forth in 8 U.S.C. 1231(a)(6), but he is being detained pursuant to the <u>pre-removal detention</u> authority set forth in 8 U.S.C. 1226. **Even If the removal period has not yet begun, *Zadvydas* mandates either construing the <u>pre-removal detention</u> authority to avoid constitutional doubt or a declaration that the <u>pre-removal statute is unconstitutional.</u>** Unlike the facts presented in *Demore*. Petitioner's detention, if deemed a <u>pre-removal period</u> detention as deemed by the United States, does not materially differ from the facts presented in *Zadvydas* and the **same constitutional due process concerns exist here** as they did in *Zadvydas*. *Moallin v. Cangemi,* 427 F. Supp. 2d 908; 2006

31. Accordingly, numerous courts that have confronted <u>pre-final order</u> detainees' challenges to their extended confinement have endeavored to apply the general rule announced in *Demore* to the specific facts of the habeas petitions presented to them where <u>pre-final order detainees</u> have been held in custody for one or more years while their removal proceedings wound their way through the administrative and appellate processes. Several courts have found that due process required that aliens subjected to lengthy mandatory detention be given bail hearings or otherwise have ordered their release in lieu of a bail hearing. For example, in *Ly v. Hansen,* 351 F.3d 263 (6th Cir. 2003), the Sixth Circuit found that following *Demore* the proper interpretation of 236(c) was to "[construe] the <u>pre-removal detention</u> statute to include an implicit requirement that removal proceedings be concluded within a reasonable time, [thereby avoiding] the need to mandate the procedural protections that would be required to detain deportable aliens indefinitely." *Id.* at 270. On this standard, the Sixth Circuit "affirm[ed] the grant of habeas corpus and the district court's finding that the incarceration of 18 months pending removal proceedings is unreasonable, [without requiring] the United States to hold bond hearings for every criminal alien detained under 236." *Id.* Although the Sixth Circuit declined to create a rigid guideline of what would constitute a reasonable or unreasonable length of <u>pre-final order detention</u>, the court emphasized that habeas relief should be available for aliens whose particular removal proceedings were taking an unusually long

time to complete: "**The INS may detain prima facie removable aliens for a time reasonably required to complete removal proceedings in a timely manner. If the process takes an unreasonably long time, the detainee may seek relief in habeas proceedings.**" *Id.* at 268.

32. Subsequent to *Ly,* courts within and without the Sixth Circuit have found habeas relief to be warranted in cases where aliens have been subject to prolonged pre-final order detention under 236(c). *See, e.g., Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir. 2005) (finding that the authority conferred by 8 U.S.C. 1226(c) "as applying to expedited removal of criminal aliens" and finding that alien's two-year and four month detention to be "not expeditious;" recognizing that further administrative and judicial review would take more than a year to complete; and ordering petitioner's release. *Diomande v. Wrona,* No. 05-73290, 2005 U.S. Dist. LEXIS 33795, 4-7 (E.D. Mich. Dec. 12, 2005) (granting habeas relief and ordering alien released on $ 10,000 bond where he had been detained in pre-final order proceedings for nearly two years, where petitioner had recently been granted withholding of removal by an Immigration Judge that was under appeal at the BIA, where the court found it "more than possible, indeed certain, that this case will proceed through the circuitry of administrative and judicial appeals for several additional months, and most likely, several years"), *Fuller v. Gonzales,* No. 3:04-CV-2039, 2005 U.S. Dist. LEXIS 5828, 14-17 (D. Conn. April 8, 2005) (where alien had been detained for more than two years under 236(c), granting habeas petition and ordering government to hold a prompt bond hearing; *see also Nadarajah v. Gonzales,* 443 F.3d 1069 (9th Cir. 2006) (in an action where the government sought to hold an alien in detention pursuant to the general immigration detention statute set forth at 8 U.S.C. 1225(b)(1)(B)(ii) and (b)(2)(A), finding that government was not empowered to detain aliens indefinitely and concluding that alien's five-year detention had been unreasonable; ordering petitioner's immediate release subject to conditions to be set by a delegate of the Attorney General); *Parlak v. Baker,* 374 F. Supp. 2d 551, 561 (E.D. Mich. 2005) (ordering pre-final order detainee released immediately for reasons other than the length of his eight-month detention, but finding it appropriate to note "[g]iven the legal intricacies surrounding Petitioner's removal, it will very likely take years for a final determination of Petitioner's status. It is certain that the removal proceedings will be protracted as this case winds through the appellate process. In determining whether Petitioner's detention is unreasonable, **the Court cannot ignore the likely future course of the case which shows a real certainty that Petitioner is facing a significant period of detention for an indeterminate period of time. This amounts to a violation of due process under the circumstances.**"). See also *Uritsky v. Ridge,* 286 F. Supp. 2d 842 (E.D. Mich. 2003).

33. The district court in *Ly v. Hansen, 351 F.3d 263;2003* properly granted writ of habeas corpus under USCS 2241, to deportable criminal alien who was citizen of Vietnam, where incarceration for 18 months pursuant to 8 USCS 1226(c) pending removal proceedings was unreasonable, although district court held that individual bond hearings were constitutionally required under Fifth Amendment, appellate court avoided constitutional questions raised by indefinite detention of aliens by construing 8 USCS 1226 to include implicit requirement that removal proceedings be concluded within

reasonable time. *Hoang Minh Ly v. Hansen* (2003, CA6 Ohio) 351 F. 3d 263, 2003 FED App. 418P, reh den (2004, CA6) 2004 US App. LEXIS 6370. The Ninth and Tenth Circuits have adopted a bright-line approach, holding that **236 is unconstitutional as applied to lawful permanent residents, no matter the length of actual detention.** *Hoang v. Comfort*, 282 F.3d 1247 (10th Cir. 2002), *rev'd*, 538 U.S. 1010, 155 L. Ed. 2d 846, 123 S. Ct. 1963 (2003); *Kim v. Ziglar*, 276 F.3d 523, *rev'd*, 538 U.S. 510, 155 L. Ed. 2d 724, 123 S. Ct. 1708 (2003) (9th Cir. 2002). The Third Circuit has held that **236 mandatory detention is unconstitutional if the detained alien seeks to avoid removal via administrative remedies.** *Patel v. Zemski*, 275 F.3d 299 (3rd Cir. 2001). The Fourth Circuit adopted a case-by-case approach, requiring an individualized determination of dangerousness, *Welch v. Ashcroft*, 293 F.3d 213 (4th Cir. 2002).

34. In *Ly v. Hansen*, 351 F.3d 263; 2003 the magistrate found that deportable aliens have a fundamental liberty interest under the Fifth Amendment. The magistrate judge likened the pre-removal detention of criminal aliens to the pre-trial detention of criminals, and adopted the "excessive to its purpose" test of *Salerno (United States* v. *Salerno*, 481 U. S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)) for regulatory legislation not designed for punishment. In weighing the competing interests, courts consider "the length of detention to which the petitioner has already been subjected, the likelihood of deportation, the potential length of the detention into the future, the likelihood that release will frustrate the petitioner's actual deportation, and the danger to the community posed by the petitioner if released." *Hermanowski v. Farquharson*, 39 F. Supp. 2d 148, 159 (D.R.I. 1999). On balancing these factors, the magistrate judge determined that *Ly*'s extended incarceration was not justified in light of the minimal danger he posed to the public. *Ly v. Hansen, 351 F.3d 263;2003*

35. While it is true that a removable alien has no right to be in the country, it does not mean that he has no right to be at liberty. *Zadvydas* established that deportable aliens, even those who had already been ordered removed, possess a substantive Fifth Amendment liberty interest, and that the interest was violated by indefinite detention. **Although criminal aliens may be incarcerated pending removal, the time of incarceration is limited by constitutional considerations, and must bear a reasonable relation to removal.** As the *Zadvydas* court stated: "detention pending a determination of removability . . . has [an] obvious termination point." *Zadvydas*, 533 U.S. at 697. **The mandatory nature of the detention does not alter the constitutional limitations to which it is subject.** Congress's plenary control must still be exercised within the bounds of the Constitution. *INS v. Chadha*, 462 U.S. 919, 941, 77 L. Ed. 2d 317, 103 S. Ct. 2764 (1983). While Congress did express a desire to have certain criminal aliens incarcerated during removal proceedings, it also made clear that such proceedings were to proceed quickly. 8 U.S.C. 1229(d)(1) (West 1999) ("In the case of an alien who is convicted of an offense which makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction."). In {351 F.3d 270} short, **imposing a reasonable time limitation on the pre-detention period both saves the statute from constitutional challenge, and is consistent with Congress's directions as to how the statute should be applied.** *Ly v. Hansen*, 351 F.3d 263;2003.

36. Petitioner should not be affectively punished for pursuing applicable legal remedies. As remarked in *Ly*, 351 F.3d at 727:

**An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.**

However, appeals and petitions for relief are to be expected as a natural part of the process. The mere fact that an alien has sought relief from deportation does not authorize the ICE to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.**"Freedom from imprisonment - from government custody, detention, or other forms of physical restraint - lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."** *Zadvydas v. Davis*, 533 U.S. 678, 150 L. Ed. 2d 653, 121 S. Ct. 2491 (2001) at 690. In *Zadvydas*, the Court stated that "government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* The fact that the alien falls under mandatory detention provision of immigration does not undermine the bedrock principle that there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the {332 F. Supp. 2d 754} alien litigates his claims. *Id.* at 690, 691. The petitioner stands for the proposition that where, as here, detention becomes prolonged, **"special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable."** *Ngo v. INS*, 192 F.3d 390, 397 (3d Cir. 1999) at 398. "The stakes are high and . . . grudging and perfunctory review is not enough to satisfy the due process right to liberty . . . .." *Id.* The assessment of flight risk and danger to the community must be made on a current basis. *Id.* "To presume dangerousness to the community and risk of flight based solely on [an alien's] past record does not satisfy due process." *Id.* at 398-99.

37. There has been no evidence as the petitioner a peaceful man, church member and a person who not getting any financial benefits from government but rather working hard and supporting his mother, him self, and his college expenses, a young individual who is building a profession and skills in computer and science technology, is a danger to the community or such a flight risk that no conditions of supervision could assure his presence in any future proceedings. In terms of the factors for consideration of release the petitioner does not have any disciplinary infractions or incident reports while on probation or in ICE custody; his criminal convictions are not for serious offenses; there is no evidence of any violence or refusal to participate in work, educational or vocational programs while detained; and there is no evidence of a history of escapes. "Due process is not satisfied . . . by rubberstamp denials based on temporally distant offenses."

distant offenses." *Ngo,* 192 F.3d at 398. Accordingly, release from confinement, subject to appropriate conditions of supervision, is mandated in this case. {332 F. Supp. 2d 755}.

38. **While going through the removal proceedings gets unreasonably prolonged for the various reasons, it does not toll the clock on the life of a person held in prison** awaiting adjudication of the merits of his challenge to the validity of a removal order. The petitioner has spent **Christmas and New Year** in custody while he pursues what must be presumed to be a good faith challenge to an order requiring his removal to a country that he left as minor and never been back. He has been imprisoned awaiting removal for such long time. Fundamental fairness demands that meaningful consideration be given to the release of an alien in petitioner's situation. Respondents have failed to provide such consideration here, and habeas corpus relief is therefore warranted. A bright-line time limitation, as imposed in *Zadvydas*, would not be appropriate for the <u>pre-removal period</u>; hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the case and the immigration judge's caseload warrant. *Ly v. Hansen, 351 F.3d 263;2003* Petitioner's incarceration for **seven (7) months** as part of a civil, nonpunitive proceeding when there is no chance of actual, final removal, is unreasonable. He has spent a considerably very long time in the ICE custody, a jail, going through the removal proceedings.

39. Although an easily administrable bright-line rule cannot be based on time, given the inevitable elasticity of the <u>pre-removal period</u>, courts are familiar with and regularly assess reasonableness as a legal standard. Rules require the ICE to act reasonably. When actual removal is not reasonably foreseeable, criminal aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a "strong special justification," constituting more than a threat to the community that overbalances the alien's liberty interest. *Zadvydas*, 533 U.S. at 690. Although it lacks a bright line, this rule is administrable by courts hearing habeas petitions arising from mandatory detention under 236. *Ly v. Hansen, 351 F.3d 263;2003* The petitioner asserts that he has received insufficient process to protect his Fifth Amendment liberty interest. "Were we to construe the statute as permitting indefinite detention, additional process would be required. *Zadvydas*, 533 U.S. at 692. If the INS were to assert a "strong special justification," consisting of more than convenience in removal or general community protection, to support indefinite detention, then a hearing would be required. *Id.* at 690. However, the INS makes no such showing here. Because we construe the statute to include a reasonable time limitation in bringing a removal proceeding to conclusion, additional process to protect that liberty interest is not required". Because there is no strong special justification in petitioner's case, because the period of time required to conclude the proceedings thus far have been unreasonable, and because actual removal is not foreseeable, petitioner should be granted the writ of habeas corpus.

40. The Ninth Circuit concluded that its statutory construction analysis in *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006) (holding that although

"other carefully defined categories" of aliens for more than six months, subject to specific limitations and procedural protections not provided for.in the "general immigration detention statutes." *Nadarajah*, 443 F.3d at 1078-1080. "the Supreme Court has given further guidance as to what it considers to be a 'reasonable' length of detention for aliens" convicted of a crime and detained under section 1226(c) pending a determination of removability. *Nadarajah*, 443 F.3d at 1080 (citing *Demore v. Kim*, 538 U.S. 510, 513, 529-531, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003)). In *Demore*, **"the Supreme Court held that the government could detain aliens who had been convicted of a crime for 'the brief period necessary for their removal proceedings,'"** and although the alien in that case "had been detained for over six months, which was 'somewhat longer than average,' the Supreme Court "viewed that 'temporary' confinement as permissible." *Nadarajah*, 443 F.3d at 1080 (quoting *Demore*, 538 U.S. at 530-531); see also *Nadarajah*, 443 F.3d at 1081 & n.4 (concluding that "[t]here is no indication anywhere in *Demore* that the Court would countenance an indefinite detention," and noting that "references to the brevity and limited nature of the confinement are found throughout" *Demore*). The Ninth Circuit reasoned that the petitioner's detention in *Nadarajah* was "more akin to the situation in *Zadvydas*," which involved 'indefinite' and 'potentially permanent'" detention. *Nadarajah*, 443 F.3d at 1080 (quoting *Zadvydas*, 533 U.S. at 690-691). **Thus, petitioner's detention of seven (7) months is beyond the amount of time the Supreme Court has considered acceptable.**

41. The 1226(c) violates substantive due process as applied to petitioner because he is a **permanent resident alien** which constitute the most favored category of aliens and that they have the right to reside permanently in the United States, to work here, and to apply for citizenship. *Ibid.* The Court of Appeals for the Ninth Circuit in *Kim v. Ziglar*, 276 F.3d 523 (2002) recognized and rejected the Government's two principal justifications for mandatory detention under 1226(c): (1) ensuring the presence of criminal aliens at their removal proceedings; and (2) protecting the public from dangerous {155 L. Ed. 2d 733} criminal aliens. The Court of Appeals discounted the first justification because it found that not all aliens detained pursuant to 1226(c) would ultimately be deported. *Id.*, at 531-532. And it discounted the second justification on the grounds that the aggravated felony classification triggering respondent's detention included crimes that the court did not consider "egregious" or otherwise sufficiently dangerous to the public to necessitate mandatory detention. *Id.*, at 532-533. Respondent's crimes of first-degree burglary (burglary of an inhabited dwelling) and petty theft, for instance, the Ninth Circuit dismissed as "rather ordinary crimes." *Id.*, at 538. Relying upon decision in *Zadvydas v. Davis*, 533 U.S. 678, 150 L. Ed. 2d 653, 121 S. Ct. 2491 (2001), the Court of Appeals concluded that the INS had not provided a justification "for no-bail civil detention sufficient to overcome a lawful permanent resident alien's liberty interest." 276 F.3d 523 at 535 (2002). **In this case the petitioner's crimes not more than ordinary crimes known to society, and therefore do not constitute as aggravated felony, however the definition of INA regulations, not criminal laws, are to determine the charge as aggravated felony.** Three other Courts of Appeals have reached the same conclusion. See *Patel* v. *Zemski*, 275 F.3d 299 (CA3 2001); *Welch* v. *Ashcroft*, 293 F.3d 213 (CA4 2002); *Hoang* v. *Comfort*, 282 F.3d 1247 (CA10 2002).

*Ashcroft*, 293 F.3d 213 (CA4 2002); *Hoang* v. *Comfort*, 282 F.3d 1247 (CA10 2002). We granted certiorari to resolve this conflict, see 536 US 956, 153 L Ed 2d 833, 122 S Ct 2696 (2002), and now reverse.

42. As of today's date, the petitioner has been deprived of his liberty by the government for a period of over **seven (7) months**. This deprivation has been inflicted not as the result of any adjudication of crime but as a bureaucratic application of the authority conferred on the Attorney General by 8 U.S.C. 1226(c). Despite the substantial powers that Congress may exercise in regard to aliens, it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal. See *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). The case is distinct from *Demore v. Kim*, 538 U.S. 510, 513-514, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003), where the alien conceded deportability. To avoid deciding the constitutional issue, one should interpret the authority conferred by 1226(c) as applying to expedited removal of criminal aliens. In the present case, petitioner's **seven (7) months** of process is not expeditious; and the foreseeable process in this court is unknown. The only reason that petitioner is being detained is because the government *may* be able to prove he is subject to removal. Petitioner contends that his indefinite detention for such a reason is not constitutionally permissible as the majority opinion by other Districts grants habeas relief; therefore, he is entitled to release.

43. As with most statutes, the relatively simple mandate of 236(c) leaves many questions unanswered, the most important of which is who, exactly, falls under the statute's provisions. The statute states only that mandatory detention applies to an alien who "is deportable by reason of having committed" a number of specified criminal offenses, but does not define those offenses with precision, nor does it define what "is deportable" means. In *re Joseph*, 22 I. & N. Dec. 799 (BIA 1999), the BIA finally gave a meaningful answer to this question. The BIA concluded that the initial determination by the Bureau of Immigration and Customs Enforcement ("BICE") that an alien fell within the reach of 236(c) was entitled to a great deal of deference. *Joseph*, 22 I. & N. Dec. at 800. Thus, the BIA held that an alien who wishes to avoid the reach of {430 F.3d 1244} 236(c) was required to show that BICE was "substantially unlikely to establish" the charges that rendered the alien subject to mandatory detention. *Id.* at 806. In *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005), *Tijani* was convicted in California of offenses that have never been found by a court or by the BIA to trigger mandatory detention. Nonetheless, BICE determined that his offenses fell within the reach of 236(c) and held him in mandatory detention. **There can be no doubt that individual liberty is one of the most fundamental rights protected by the Constitution.** *See Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) ("Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty [the Due Process] Clause protects."). ICE gives that right little or no weight. Instead, it establishes a system of "detention by default". When such a fundamental right is at stake, however, the Supreme Court has insisted on heightened procedural protections to guard against the erroneous deprivation of that right. In particular, the Supreme Court has time and again rejected laws that place on the individual the burden of protecting his or her fundamental rights. The first of these

the Court elaborated upon the "function of a standard of proof, as that concept is embodied in the Due Process Clause." *Id.* at 423. **The Court found it improper to ask "the individual . . . to share equally with {430 F.3d 1245} society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state,"** *id.* at 427. Thus, the Court concluded that "due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id.* at 427. See also *Cooper v. Oklahoma*, 517 U.S. 348, 363, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996), *Santosky v. Kramer*, 455 U.S. 745, 756, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), *Foucha v. Louisiana*, 504 U.S. 71, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992). As the above cases illustrate, the Supreme Court has consistently adhered to the principle that the risk of erroneous deprivation of a fundamental right may not be placed on the individual. For example, in *Salerno*, the Supreme Court upheld the Bail Reform Act, which allowed the government to detain an arrestee pending trial upon a showing by the government that "no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" 481 U.S. at 741 (quoting Bail Reform Act of 1984, 18 U.S.C. 3142). In upholding the Act, the Court emphasized how narrowly crafted it was, citing the "stringent time limitations" placed on pretrial detention, *id.* at 747, {430 F.3d 1246} its applicability only to the "most serious of crimes," *id.*, its requirement of proof of dangerousness by clear and convincing evidence, *id.* at 750, and its judicial safeguards, *id.* at 751-52.

44. One need look no further than the petitioner's parallel petition for review to find a perfect illustration of the *Joseph* standard's unconstitutional allocation of the burden of proof. **Petitioner now has a petition for review of the merits of his prolonged detention both going through the proceedings and for the final hearing pending with the immigration court before this court.** Yet, based on the blanket application of the all-but-insurmountable *ICE* standard, petitioner remained in detention the entire time his case has been pending and still counting. Under these circumstances, his detention for **seven (7) months** is simply inconsistent with due process of law.

45. In light of the due process concerns described above, this court should interpret 236(c) to apply mandatory detention in a more narrow fashion. Only those immigrants who could not raise a "substantial" argument against their removability should be subject to mandatory detention. *See Demore*, 538 U.S. at 578-79 (Breyer, J., dissenting). This interpretation is not only more respectful of the Constitution; it is also more consistent with Congress' chosen language. *Id.* at 578 ("Title 8 U.S.C. 1226(c) tells the Attorney General to 'take into custody any alien who . . . *is* deportable' (emphasis added), not one who may, or may not, fall into that category."). The "substantial argument" standard strikes the best balance between an alien's liberty interest and the government's interest in regulating immigration. *See Demore*, 538 U.S. at. It gives the alien's liberty rights adequate respect and ensures that the alien's detention will be relatively brief. At the same time, it provides the government leeway to detain those aliens who lack any incentive to press their legal claims, and are therefore the most likely to abandon those claims and flee. **Petitioner easily meets the substantial argument standard, despite the ICE intervening decision finding him removable. Petitioner almost certainly has a winning argument that he is not removable for having**

committed an aggravated felony. **The only evidence the ICE relied upon was the INA definition of "Child abuse" Florida Statute 827.03 general statute and it's unclear as to what the petitioner illegal act was, let alone that he was convicted under the "aggravated" subpart but "Child abuse" has a wide interpretation and continued for a numerous subsection.** *See Taylor*, 495 U.S. at 602; *Tokatly v. Ashcroft*, 371 F.3d at 620. This easily constitutes a substantial argument that petitioner's conviction does not amount to an aggravated felony.

46. As to the argument that petitioner's crime does not constitute a crime of moral turpitude, it has not been clearly established the petitioner's conviction is an aggravated felony for alleged conviction on April 25th, 2012 and on August 9th, 2012, some three months and fourteen days, counting the time spent waiting for the state trial court finalize the case, the government issued a NTA, a showing that the petitioner's case could not have been aggravated felony although there were a probationary period, there were no use of violence or destructive force was ever found by state trial court in the instant case thus it safe to say that petitioner's charge cannot be deemed to be as a crime involving moral turpitude, petitioner has also raised a substantial argument. For petitioner's conviction to involve moral turpitude, it must involve fraud. *See Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005) ("Crimes of moral turpitude are of basically two types, those involving fraud and those involving grave acts of baseness or depravity."); *Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir. 1995); *Goldeshtein v. INS*, 8 F.3d 645, 647 (9th Cir. 1993). *See In re Kinney*, 10 I. & N. Dec. 548, 549 (BIA 1964) ("The intent that the false statement be relied upon is not necessarily an intent to do evil or work fraud because . . . one who intends that there be reliance upon his false statement may nevertheless also intend to pay for the goods his is attempting to obtain."). This case stands in stark contrast to case of *Carty*, in which court found that willful failure to file California state income taxes was a crime involving moral turpitude. 395 F.3d at 1082, 1085. Unlike Cal. Penal Code 532a(1), the statute in *Carty* explicitly required a finding of **"intent to evade,"** which the court found to be synonymous with **"intent to defraud."** *Id.* at 1083, 1085; *see also id.* at 1085 ("Intent to evade has generally been held to require proof of fraud").

47. As the Supreme Court has held on two occasions, detention incidental to removal must bear a reasonable relation to its purpose. *See Demore*, 538 U.S. at 527; *Zadvydas*, 533 U.S. at 690. In *Zadvydas*, the Court held that detention raised serious constitutional questions when its goal -- preventing flight -- was "no longer practically attainable" due to the unlikelihood of the aliens' ultimate removal. *Zadvydas*, 533 U.S. at 690. 9 In *Demore*, on the other hand, the detention was "reasonably related" to the goal of preventing flight both because the alien was unquestionably removable, and thus presented a high flight risk, and the time period was limited, lasting on average for a mere 47 days. *Demore*, 538 U.S. at 527-29. As noted by Justice Kennedy in concurrence, however, there exists a point at which the length of detention becomes so egregious that it can no longer be said to be "reasonably related" to an alien's removal. Id. at 532 (Kennedy, J., concurring) ("Since the Due Process Clause prohibits arbitrary deprivations of liberty, **a lawful permanent resident** alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued

individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."). The Sixth Circuit has since agreed with this position in *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2004). **Given the record, this court is in a position to address petitioner's argument that the sheer length of his detention violates the Constitution now. The seven (7) months that petitioner has so far been detained have reached the point of unreasonableness.** In absolute terms the length of time is unreasonable -- it is more than four times the average length of 47 days average detention, and is a month longer than six months the Supreme Court suggested would be unreasonable in *Zadvydas*. See *Zadvydas*, 533 U.S. at 701.

**Could an American ever conceive of being detained in a prison cell indefinitely? The United States Nation's Founding Fathers could not fathom such an unscrupulous idea, knowing that this would run afoul of central American values--life, liberty, and property. ( See U.S. Const. amend. V ("No person shall...be deprived of life, liberty, or property, without due process of law"); The Declaration of Independence para. 2 (U.S. 1776)( declaring that "life, liberty, and pursuit of Happiness" are among the "unalienable rights" of every man). Arguably, these constitutionally guaranteed interests are at stake not only for Americans but for anyone within the United States' borders including the petitioner.**

# CLAIMS FOR RELIEF

## COUNT ONE

### STATUTORY VIOLATION

48. Petitioner re-alleges and incorporates by reference paragraphs 1 through 47 above.

49. Petitioner's continued detention by Respondent is unlawful and contravenes 8 U.S.C. §1226(c)(2). Petitioner's removal to HAITI or any other country is not significantly likely to occur in the reasonably foreseeable future. Petitioner continues to languish in detention. ICE continued detention of petitioner under such circumstances is unlawful. The petitioner has been in ICE detention from 08-09-2012 and counting.

50. Section 1226(c) provides, in pertinent part: (1) Custody. The Attorney General shall take into custody any alien who-- (A) is inadmissible by reason of having committed any offense covered in section 212(a) (2) [8 USCS § 1182(a) (2). But where detention is prolonged and/or indefinite, post- *Demore,* courts have placed limits on the time that the government can detain a person in a removal proceedings. *Tijani v. Willis,* 430 F.3d 1241(9th Cir.2005)[ordered a bond hearing before IJ for LPR who has been imprisoned for two years and eight months duration finding that "it is constitutionally

doubtful that congress may authorize imprisonment of this duration finding for lawfully admitted resident aliens who are subject to removal "] *Uritsky v. Ridge*, 286 F. Supp. 2d 842 (E.D. Mich. 2003)[court in *Demore* operated on assumption that detention pre-removal was for short duration and would be less than six months as *Zadvydas*, and therefore person in detention for over 11 months should be released notwithstanding mandatory detention provision].

## COUNT TWO

## SUBSTANTIVE DUE PROCESS VIOLATION

51. Petitioner re-alleges and incorporates by reference paragraphs 1 through 50 above.

52. Petitioners continued detention violates Petitioners right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint

53. Petitioner has been detained by ICE for **seven (7) months** and counting. Petitioner's continued detention violates petitioner's right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint. The Due Process clause of the Fifth Amendment requires that the deprivation of petitioner's liberty be narrowly tailored to serve a compelling government interest. While Respondent would have an interest in detaining petitioner in order to effectuate removal, that interest does not justify the indefinite detention of petitioner, who is not significantly likely to be removed in the reasonably foreseeable future; nor is he a threat to society or flight risk.

54. The presumptively reasonable period during ICE may detain an alien to secure his/her appearance before the court during the removal proceedings, should not be indefinite. In case of petitioner, **seven (7) months** have past and he is still in ICE detention, deprived of liberty and freedom that is a gross violation of petitioner's right to substantive due process.

## COUNT THREE

## PROCEDURAL DUE PROCESS VIOLATION

55. Petitioner re-alleges and incorporates by reference paragraphs 1 through 54 above.

56. Under the Due process clause of the Fifth Amendment, an alien is entitled to timely and meaningful opportunity to demonstrate that she/he should not be detained. Petitioner in this case has been denied that opportunity. ICE does not make decisions concerning alien's custody status in a neutral and in partial manner. The failure of Respondent to provide a neutral decision-maker to review the continued custody of petitioner violates petitioner's right to procedural due process.

57. Further, Respondent has failed to acknowledge or act upon the petitioner's administrative request for release in timely manner. There is no administrative mechanism in place for the petitioner to demand a decision, ensure that a decision will ever be made in the near future, or appeal a custody decision that violates congressional statute.

58. As more fully explained in the accompanying memorandum of law, Petitioner's continued detention is a violation of his procedural due process rights. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319 (1976). Courts employ the *Eldridge* test when an alien's due process liberty interests are at stake. See *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160-61 (9th Cir.2004). The test considers three factors: (1) the affected private interest, (2) the risk of erroneous deprivation of that interest, and (3) the government's interest.

59. Petitioner's private interest affected by Respondents' actions is profound –his physical liberty. The risk of erroneous deprivation of Petitioner's liberty is high, because he is neither a flight risk nor a danger. See *Matter of Patel*, 15 I. & N Dec. 666, 666(B.I.A. 1976) ("An alien generally is and should not be detained or required to post bond except on a finding that he is a threat to the national security, or that he is a poor bail risk."). As the *Eldridge* test demonstrates, the deprivation of Petitioner's liberty interest far outweighs the government's interest in his continued detention during several removal proceedings.

60. For all of the foregoing reasons, Petitioner's continued detention without an individualized bond hearing is not authorized under § 1226(c) and is in violation of his procedural due process rights.

### PRAYER FOR RELIEF

WHEREFORE; Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Grant Petitioner a writ of habeas corpus directing the respondents to immediately release Petitioner from custody;

3) Enter preliminary and permanent injunctive relief enjoining respondents from further unlawful detention of Petitioner;

4) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S C. § 504 and 28 U.S.C. § 2412 and on any other basis justified under law.

5) Order Respondents to refrain from transferring Petitioner out of the jurisdiction of this Court during the pendency of this proceeding and while Petitioner remains in Respondents' custody; and,

6) Grant any other and further relief that this deems just and proper.

## OATH

I, UNDER PENALTY OF PERJURY, affirm that the foregoing statement is true and correct.

Date: March o6, 2013

*Luxembeau Bazin*
LUXEMBEAU BAZIN

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing Writ of Habeas Corpus was placed in the hands of officials at Glades County Detention center, as prima facie proof of service, to be hand delivered or mailed to: **U.S. COURTHOUSE AND FEDERAL BUILDING** at: 2110 First Street, suite # 2-194, Fort Myers, Florida 33901; **ERIC HOLDER**, U.S. Attorney General at: U.S. Department of Justice, 950 Pennsylvania Ave, N.W., Washington DC, 20530-0001, **JANET NAPOLITANO**, Secretary of the Department of Homeland Security at U.S. Department of Homeland Security Washington DC, 20528, **MARK J. MOORE**, Field Office Director at: 865 S.W. 78th Ave, Suite 101, Plantation, FL 33324, **ANTHONY AIELLO**, Asst. Field Office Director at: 865 S.W. 78th Ave, Suite 101, Plantation, FL 33324, and **STUART K. WHIDDON**, at 1297 East State Road 78, Moore Haven, FL 33471 on this o6 day of March 2013

*Luxembeau Bazin*
LUXEMBEAU BAZIN
A 058-845-337
Glades County Detention Center
P.O.Box:39
Moore Haven, FL33471



State of FLORIDA
County of GLADES   21 PAGES
Subscribed and sworn to (or affirmed) before me this
6 day of MARCH 2013
By LUXEMBEAU BAZIN
Personally known ____ OR produced identification GCb9 12 ᴀ ᴺᴼᴼ 654ᵤ
Type identification produced GLADES COUNTY DETENTION CENTER

_____
Notary Public

CINDY L AGUILAR
MY COMMISSION # EE 216377
EXPIRES: July 15, 2016
Bonded Thru Notary Public Underwriters

